**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

BRYAN COLLADO,
*on behalf of himself and others similarly situated*,

             Plaintiff,

             v.

SCHIFF NUTRITION INTERNATIONAL, INC.
and RECKITT BENCKISER LLC,

             Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff BRYAN COLLADO (herein "Plaintiff COLLADO" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorney, pursuant to this Class Action Complaint against the Defendants, SCHIFF NUTRITION INTERNATIONAL, INC. and RECKITT BENCKISER LLC ("Defendants"), alleges the following:

<u>**NATURE OF THE ACTION**</u>

1.     This is a consumer protection action seeking redress for, and a stop to, Defendants' unfair and deceptive practices in the advertising and marketing of its Tiger's Milk Protein Rich Nutrition Bar (herein, the "Product") *See* **Exhibit A**.

2.     Plaintiff and Class members viewed the Product's misleading front label and reasonably relied on the misrepresentation that that Product is "Protein Rich," when it is not in fact

protein rich. Plaintiff and Class members were deceived into purchasing a product inferior to the one they had bargained for. Accordingly, the Product violates New York and other state laws against misleading branding and advertising.

3.    Upon information and belief, Defendants continue to sell the misbranded Product.

4.    Plaintiff brings this proposed consumer class action on behalf of himself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not resale.

5.    Defendants market the Product in a way that is deceptive to consumers under consumer protection laws of New York, the other 49 states, and the District of Columbia.

6.    Defendants violate statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
44) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
45) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;* and
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

7.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.       Furthermore, this court has personal jurisdiction over Defendants because their Product is advertised, marketed, distributed, and sold throughout New York State. Defendants engage in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendants are authorized to do business in New York State, and Defendants have sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants engage in substantial and not isolated activity within New York State.

9.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## PARTIES

*Plaintiff*

10.       Plaintiff COLLADO is, and at all relevant times hereto has been, a citizen of New York state and a resident of Queens County. On July 10, 2019, Plaintiff COLLADO purchased a 24-pack of 1.23 oz Tiger's Milk Protein Rich Nutrition Bar from Amazon.com for $19.99.

11.       Plaintiff COLLADO purchased the Product relying on Defendants' representations on the Product packaging. As a result of Defendants' deceptive conduct as alleged herein, Plaintiff COLLADO was injured when he paid money for a product that did not deliver the qualities it

promised and misled him as to its contents. The Product is labeled as "PROTEIN RICH" but in fact it contains an insignificant protein count when compared to similar products. Plaintiff COLLADO would not have been willing to pay the sum he paid had he known it was mislabeled.

12.     In other words, Defendants delivered a Product with significantly less value than was warranted by their representations, thereby depriving Plaintiff COLLADO of the benefit of his bargain and injuring him in an amount up to the purchase price. Damages can be calculated through expert testimony at trial. Further, should Plaintiff COLLADO encounter the Product in the future, he could not rely on the truthfulness of the packaging, without corrective changes to the packaging and the advertising of the Product.

*Defendants*

13.     Defendant Schiff Nutrition International, Inc. is a corporation organized under the laws of Delaware with its headquarters at 2002 South 5070 West, Salt Lake City, UT 84104-4726. Its agent and address for service of process is at Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808.

14.     Defendant Schiff Nutrition International, Inc. is a wholly owned subsidiary, of Defendant Reckitt Benckiser LLC. Reckitt Benckiser LLC is a corporation organized under the laws of Delaware with its headquarters at Morris Corporate Center IV, 399 Interpace Parkway, P.O. Box 225, Parsippany, NJ 07054-0225. Its agent and address for service of process is at Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808.

15.     Defendants develop and market the Product throughout the United States. The Product is available at numerous retail and online outlets.

16.     The advertising for the Product, relied upon by Plaintiff, is approved by Defendants and their agents, and is disseminated by Defendants and their agents through advertising

containing the misrepresentations alleged herein. The advertising for the Product is designed to encourage consumers to purchase the Product, and misleads the reasonable consumer, i.e., Plaintiff and the Class. Defendants own, manufacture, and distribute the Product, and/or authorize the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Product.

## FACTUAL ALLEGATIONS

### Nutrition Bars, Protein, and the American Diet

17.   Nutrition bars have become an integral part of the American diet over the years. What began as a niche product for athletes trying to gain an advantage over the competition has emerged to be a lifestyle staple for many Americans seeking a healthy and convenient snack or meal replacement.[1]

18.   Americans have also become increasingly aware of the importance of protein in their diets. *WebMD* observes that "[h]igh-protein, low-carbohydrate diets are the hottest thing since sliced flank steak, and every food marketer in the known universe appears to want a piece of the protein pie."[2]

19.   This increasing emphasis on protein reflects the nutrient's well-recognized health benefits and particularly its importance for weight-loss. As nutrition researcher Kris Gunnars observes in the online wellness magazine *healthline*:

> The health effects of fat and carbs are controversial. However, almost everyone agrees that protein is important. Most people eat enough protein to prevent deficiency, but some individuals would do better with a much higher protein intake. Numerous studies suggest that a high-protein diet has major benefits for weight loss and metabolic health.[3]

---

[1] https://www.outsideonline.com/2377741/snackification-american-diet;
https://www.webmd.com/diet/features/nutrition-bars-healthy-hype#1
[2] https://www.webmd.com/men/features/benefits-protein#1
[3] https://www.healthline.com/nutrition/10-reasons-to-eat-more-protein#section1

20.     Protein is vital to a wide range of physiological functions.   Unlike fat and carbohydrates, however, it cannot be stored by the body, requiring health-conscious consumers to stay vigilant about maintaining a suitably high intake. *WebMD* explains:

> It's easy to understand the excitement. Protein is an important component of every cell in the body. Hair and nails are mostly made of protein. Your body uses protein to build and repair tissues. You also use protein to make enzymes, hormones, and other body chemicals. Protein is an important building block of bones, muscles, cartilage, skin, and blood.
>
> Along with fat and carbohydrates, protein is a "macronutrient," meaning that the body needs relatively large amounts of it. Vitamins and minerals, which are needed in only small quantities, are called "micronutrients." But unlike fat and carbohydrates, the body does not store protein, and therefore has no reservoir to draw on when it needs a new supply.[4]

21.     Unsurprisingly, these two trends—toward nutrition bars and toward protein—have converged in the protein bars, which many busy consumers now rely upon to supplement their diets, often with weight-loss or weight-maintenance in mind. The online wellness magazine *livestrong* observers:

> Protein is an essential macronutrient that supports several structures in your body. You can find protein in numerous sources including eggs, meat, fish and nuts. However, many people rely on protein supplements to get their recommended daily amount. The protein bar is just one option that has several dietary and lifestyle benefits…
>
> Eating snack-size protein bars can help reduce overeating between meals. Many bars come in indulgent dessert flavors -- like chocolate, peanut butter, fudge brownie and lemon meringue -- to satisfy your sweet tooth while avoiding blood sugar spikes and subsequent crashes. Over time, blood sugar spikes -- associated with snacks like candy bars and other sweets -- can lead to weight gain. Your body converts excess blood sugar, which is not immediately used for energy, into fat.[5]

22.     However, there is significant variation between the wide gamut of nutrition bars that hold themselves out as having a high protein content.   Many of these products actually lack the protein content to deliver what consumers are expecting, especially relative to their

---

[4] https://www.webmd.com/men/features/benefits-protein#1
[5] https://www.livestrong.com/article/536466-the-advantages-of-eating-protein-bars/

substantially higher sugar and carbohydrate content, which can militate against the benefits

consumers are seeking to derive from protein.  *Everydayhealth.com* reports:

> The only problem, says Jessica Janc, a certified sports nutritionist with the National
> Association of Sports Nutrition, is that not all protein bars are created equal — many
> protein bar brands are so loaded with sugar, they're more like delicious candy bars than
> dietary supplements. The key, Janc says, is selecting a protein bar with the right building
> blocks — protein should be at least half the amount of the bar's carbohydrates. "For
> instance, if the bar has 24 grams of carbohydrates, I would want it to have at least 12 grams
> of protein," Janc explains. "I like the sugars to be below 7 grams and the fat to be below
> 12 grams."[6]

23.     Nutritionists agree that protein-based nutrition bars should contain well over 10

grams of protein to be effective. The fitness consulting company *Born Fitness* reports

> "The biggest thing I tell people is, 'Know how you plan to use the
> bar,'" says Anthony D'Orazio, director of nutrition and physique at Complete
> Human Performance, LLC. "If I'm looking to replace protein specifically, I'm
> looking for around 20 grams of protein,"…[7]

24.     In the same vein, protein bar specialist and seller *Ripped Kit* observes

> With the recent craze to label everything as high-protein, check the figure before you buy.
> The average is around 20g protein, which gives a decent boost to your protein intake. With
> most bars weighing around 60g total, it means around a third of the bar is pure, muscle-
> building protein.
>
> Closer to 15g protein? That's not amazing, but not bad either. Plus there may be a good
> reason. For example, a 'flapjack' style protein bar is going to have more oats (i.e. carbs) so
> will have a little less protein.
> At the lower end of the scale, when you're looking at a 'protein' bar which only packs 5-
> 10g protein; don't bother.[8]

## Defendants' Product Is Not Protein Rich

25.     The Product's front label claims that it is "Protein Rich."  But this statement is

deceptive and misleading given that it only contains 6 grams of protein, which nutritionists and

---

[6] https://www.everydayhealth.com/diet-and-nutrition-pictures/smart-protein-bar-picks.aspx#looking-for-the-best-protein-bars
[7] https://www.bornfitness.com/good-protein-bars/
[8] https://ripped-kit.co.uk/blogs/news/what-you-should-look-for-in-a-protein-bar

trainers regard as inadequate to fulfill the underlying purposes of protein-based nutrition bars, as detailed above.

26.     This inadequacy is further confirmed when the Product is compared to other nutrition bars that also make high protein claims on their front labels.  **Exhibit B** reproduces the labeling of three such bars, and the table below demonstrates that they contain significantly higher protein content than Defendants' Tiger's Milk bar, both in absolute terms and relative to their net weight:

| Product | Net weight (g) | Protein Content | Protein Per 35g |
|---------|----------------|-----------------|-----------------|
| Tiger's Milk | 35g | 6g | 6g |
| ZonePerfect | 60g | 20g | 11.7g |
| Think! | 60g | 20g | 11.7g |
| Barology | 56g | 18g | 11.25g |

27.     It bears noting that these comparison products also contain significantly less sugar than Tiger's Milk.  Whereas the latter contains a full 14 grams of sugar, these other bars contain between 0 and 6 grams.  As discussed above, consumers seeking out protein supplements are seeking to maintain a high protein-to sugar ratio, which Tiger's Milk thwarts on two fronts, through both inadequate protein and inordinate sugar.

28.     The egregiousness of Defendants' misrepresentation is further demonstrated by the fact that even nutrition bars which **do not** hold themselves out as being high or rich in protein still offer consumers more protein that does Tiger's Milk.  **Exhibit C** reproduces the labeling of six popular nutrition bars that do not make high protein claims, and the table below demonstrates that

they nevertheless contain more protein than Tiger's Milk, both in absolute terms and relative to net weight:

| Product | Net weight (g) | Protein Content | Protein Per 35g |
|---|---|---|---|
| Tiger's Milk | 35g | 6g | 6g |
| Zing | 50g | 13g | 9.1g |
| ZonePerfect Nutrition Bar | 45g | 10g | 7.8g |
| PureFit | 57g | 18g | 11.1g |
| Extend Nutrition | 42g | 10g | 8.3g |
| NuGo | 50g | 11g | 7.7g |
| SoLo | 50g | 12g | 8.4g |

**Defendants' Misleading Packaging Practices Would Deceive, be Material to, and be Relied Upon By, a Reasonable Consumer**

29.     Defendants' misleading labeling practices were material to, and were relied upon, by Plaintiff, the Class, and reasonable consumers. High protein content is important to consumers of nutrition bars, and especially to those purchasing bars claiming to be rich in protein.  While reasonable consumers of nutrition bars care about taste, their primary motivation for purchasing these is *nutrition*.

30.     Defendants' "Protein Rich" representation would mislead a reasonable consumer because reasonable consumers of protein-based nutrition bars would expect a "Protein Rich" bar to contain significantly more protein than non-protein-based nutrition bars, which Tiger's Milk does not.  Such consumers would expect the "Protein Rich" Tiger's Milk bar to contain a level of

protein comparable to those of other nutrition bars claiming to be high in protein, at least relative to net weight, which Tiger's Milk does not.

31.     Plaintiff and the Class did not know, and had no reason to know, that the Product did not contain a high protein content. Had they known this, they would not have bought the Product.

**Defendants' Mislabeling Violates Federal Law, with which Plaintiff's Claims Are Consistent**

32.     Defendants also violate requirements set out by the Food and Drug Administration ("FDA") for what may be marketed as high in protein:

> The terms "high," "rich in," or "excellent source of" may be used on the label and in the labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that the food contains 20 percent or more of the RDI or the DRV per reference amount customarily consumed.[18]

21 CFR 101.54(b)

33.     The DRV for protein for adults and children over four years of age is 50 grams.[19] Thus, a nutrition bar would have to contain ten grams of protein, not six, before it could lawfully claim to be rich in protein.  The Product fails to satisfy this standard because its protein content is **only 12%** of the DRV or RDI (6/50).

34.     Plaintiff is not seeking to enforce FDA regulations.  The Product's labeling is deceptive irrespective of these. However, the FDA's determination that 6 grams of protein does not qualify as "rich" in protein is powerful persuasive evidence that a reasonable consumer would be deceived by the Product's mislabeling, particularly when viewed in conjunction with the expert opinions and product comparisons adduced above.

---

[18] "RDI" refers to Reference Daily Intake. "DRV" means Daily Reference Value. *See* A Food Labeling Guide: Guidance for Industry issued by the U.S. Department of Health and Human Services, the Food and Drug Administration, and the Center for Food Safety and Applied Nutrition, *available at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-food-labeling-guide (last visited April 26, 2019).
[19] A Food Labeling Guide: Guidance for Industry, pg. 29, https://www.fda.gov/media/81606/download

**Plaintiff and the Class Were Injured as a Result of Defendants' Misrepresentations**

35.     Plaintiff and Class members were injured when they paid the full price of the Product and received something inferior to that warranted by Defendants' misrepresentations.

36.     Plaintiff was thus deprived of the benefit of his bargain, injured in an amount up to the purchase price, to be determined by expert testimony at trial.

**Defendants Intended to Mislead Plaintiff and the Class**

37.     Defendants' Product labeling is deceptive, misleading, and was designed to increase sales of the Product. Defendants' misrepresentations are part of their systematic Product labeling and packaging practices.

38.     Defendants' intended to mislead and deceive its consumers, since it knew that the Product contained only 6 grams of protein.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States who made retail purchases of the Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").[20]

---

[20] *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp*., No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and Bristol-Myers is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *52-53 (E.D. La. Nov. 28, 2017) ("it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties" and interpreting Bristol-Meyers as barring nationwide class actions where jurisdiction over defendant is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts."); *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 364 (D. Ariz. 2009) ("Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.").

In the alternative, Plaintiff seeks to represent a Class consisting of:

> All persons who made retail purchases of the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

40.     The proposed Classes exclude current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

41.     Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

42.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

43.     Common questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

    i.   Whether Defendants labeled, packaged, marketed, advertised, and/or sold the Product to Plaintiff and Class members, using false, misleading, and/or deceptive packaging and labeling;

    ii.  Whether Defendants' actions constitute violations of the consumer protection laws of New York and the other states;

    iii. Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising, and/or sale of the Product;

iv.   Whether Defendants' labeling, packaging, marketing, advertising, and/or selling of the Product constituted unfair, unlawful, or fraudulent practices;

v.   Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future;

vi.   Whether the members of the Classes have sustained damages as a result of Defendants' wrongful conduct;

vii.   The appropriate measure of damages and/or other relief; and

viii.   Whether Defendants should be enjoined from continuing their unlawful practices.

44.   Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members purchased Defendants' Product and sustained similar injuries arising out of Defendants' conduct in violation of Federal and New York state law. Defendants' unlawful, unfair, and fraudulent actions involve the very same mislabeling irrespective of where or when it was viewed.  The injuries of the Classes were caused directly by Defendants' unfair and deceptive practices.

45.   In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

46.   Plaintiff will fairly and adequately represent and pursue the interests of the Classes. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

14

47.     Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Class members. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

49.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

50.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

51.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.

Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

52.     Defendants' conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

53.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

54.     Plaintiff brings these claims on behalf of himself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

55.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

56.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are... unlawful."

57.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349… claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

58.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

59.     Here, the practices employed by Defendants, whereby they advertise, sell, and market their Product as "PROTEIN RICH", is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

60.     The foregoing deceptive acts and practices were directed at consumers.

61.     Defendants should be enjoined from representing the Product as "PROTEIN RICH" on the Product labels pursuant to NY GBL § 349.

62.     Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

63.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

64.     Plaintiff brings these claims on behalf of himself and other members of the Nationwide Class for Defendants' violations of NY GBL § 349.

65.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the other members of the New York Class for Defendants' violations of NY GBL § 349.

66.     Defendants' business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

67.     Defendants' practices as described throughout this Complaint were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

        a.     Defendants misrepresent or misleadingly advertises that the Product is "PROTEIN RICH" with an intent to cause Plaintiff and Class members that it contained a high protein content;

18

b.      Defendants caused Plaintiff and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through their conduct; and

c.      Defendants made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

68.     The practices employed by Defendants, whereby Defendants advertise, promote, and market their Product as "PROTEIN RICH," is unfair, deceptive, and misleading, and in violation of NY GBL § 349.

69.     Under the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

70.     Defendants' actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Product as a result of and Defendants' generalized course of deception.

71.     The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Product. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

**COUNT III**

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
(FALSE ADVERTISING LAW)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar
consumer protection laws of other states and the District of Columbia to the extent New
York consumer protection laws are inapplicable to out-of-state Class members, or, in the
alternative, on behalf of the New York Class)**

72.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

73.     Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class, for violations of NY GBL § 350.

74.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

75.     Defendants have been and/or is engaged in the "conduct of… business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

76.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a(1).

77.     Here, Defendants caused to be disseminated throughout New York and the United States, through advertising, marketing, and other publications, statements that were untrue and/or misleading.

20

78.     Defendants' affirmative misrepresentation that the Product is "PROTEIN RICH" is material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Product were, and continue to be, exposed to Defendants' material deceptions.

79.     Defendants have violated N.Y. Gen. Bus. Law § 350 because its labeling of the Product as a "PROTEIN RICH" is material and likely to deceive a reasonable consumer.

80.     Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising.

81.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT IV**

**COMMON LAW FRAUD**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

82.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

83.     Defendants intentionally make materially false and misleading representations regarding the nature of the Product.

84.     Plaintiff and Class members reasonably relied on Defendants' false and misleading representations. They did not know, and had no reason to know, that the Product is not rich in protein. They would not have purchased the Product had they known the truth.

85.     Defendants knew and intended that Plaintiff and the Class members would rely on its misrepresentations.

86.     Plaintiff and Class members have been injured as a result of Defendants' fraudulent conduct.

87.     Thus, Defendants must be held liable to Plaintiff and Class members for damages sustained as a result of Defendants' fraud.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seek judgment against Defendants, as follows:

a.   An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.   An Order appointing the undersigned attorney as Class Counsel in this action;

c.   Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.   All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.   Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.   An order (i) requiring Defendants to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendants to engage in a corrective advertising

campaign; and (iii) requiring Defendants to reimburse Plaintiff and all Class members, up to the amounts paid for the Product;

g.   Statutory pre-judgment and post-judgment interest on any amounts;

h.   Payment of reasonable attorneys' fees and costs; and

i.   Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: September 10, 2019

Respectfully submitted,



By:   */s/ C.K. Lee*
        C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorney for Plaintiff and the Class*